IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| HUGO F. MARQUEZ, | Case No. 6:17-cv-01978-IM |
| Petitioner, | **OPINION AND ORDER** |
| v. | |
| BRANDON KELLY, | |
| Respondent. | |

**IMMERGUT, District Judge.**

Petitioner Hugo F. Marquez ("Marquez"), an inmate at the Oregon State Penitentiary, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, challenging the legality of his 2009 state convictions. Respondent urges the Court to deny habeas relief because (1) all but three of Marquez's claims are procedurally defaulted, and (2) the state court's rejection of the remaining claims is not objectively unreasonable. For the reasons set forth below, this Court DENIES Marquez's Habeas Petition (ECF No. 2) as to grounds one and three and holds ground two in abeyance pending the U.S. Supreme Court's decision in *Ramos v. Louisiana*, No. 18-5925.

# BACKGROUND

On December 15, 2008, a grand jury returned an indictment charging Marquez with sexual abuse in the first degree (counts one, three, five, and seven), unlawful sexual penetration in the first degree (counts four, six, and eight), unlawful sexual penetration in the second degree (count two), criminal mistreatment in the first degree (count nine), assault in the third degree (count ten), and rape in the first degree (counts eleven and twelve). Resp't Exs. (ECF No. 30), Ex. 102.[1] The charges arose out of Marquez's sexual abuse of "TA," the twelve-year-old daughter of family friends.

## I.  The Trial

Marquez lived with his fiancé Aracely Ibarra-Chacon ("Ibarra-Chacon") and her three children "JA," "DA," and "CA." Resp't Ex. 107 at 182. They were former neighbors and good friends with TA, her sister "KA," and their mother "Wendy A." *Id.* at 28-29. The children often played together at Marquez's home and it was common for Marquez to be the only parent supervising the children. *Id.* at 29-34, 182-83, 191. TA and KA spent the night "many times." *Id.* at 183.

On November 29, 2008, TA and her family visited Marquez and Ibarra-Chacon. *Id.* at 35, 154, 183. Marquez and Wendy's fiancé played a drinking game and became intoxicated. *Id.* at 36-37, 40-41, 192-93, 199-200. Marquez convinced Wendy to permit TA and KA to spend the night. *Id.* at 37-38. After Wendy and her fiancé left for the evening, Ibarra-Chacon saw Marquez kiss TA on the lips. *Id.* at 183-85. Later that evening, Ibarra-Chacon saw Marquez sitting next to TA in the living room rubbing her breast and appearing to move his hand toward a blanket

---

[1] The state dismissed counts two, nine, and ten prior to trial. Resp't Exs. 106 at 2-4, 139.

PAGE 2 – OPINION AND ORDER

covering her legs. *Id.* at 187-89. Ibarra-Chacon testified that she yelled at Marquez and he stood up and said "Oh, I'm so stupid for doing that." *Id.* at 190.

Ibarra-Chacon testified that she telephoned Wendy to come get her girls and Marquez left in his car. *Id.* at 48-49, 190; Resp't Ex. 108 at 30. When Wendy arrived, she took TA into a back bedroom and questioned her about what had happened. Resp't Ex. 107 at 41, 49-51. Wendy testified that TA did not want to talk about it, but when she asked TA how many times this had happened, she replied "[e]very time I come over." *Id.* at 41. Wendy called the police and reported the abuse. *Id.* at 35, 42-43. TA was examined at Legacy Emanuel Medical Center that evening. Resp't Ex. 121 at 6. According to the hospital report, TA told the examining physician that a friend's father touched her "pee pee" and her "boob." *Id.* TA stated that "her clothes were on" and she "denied penetration and being touched by anything other than his finger." *Id.*

Portland police officers found Marquez asleep in his car at his workplace. Resp't Ex. 106 at 111-12. Tigard Police Detective Kary Duncan ("Duncan") questioned Marquez at the Tigard police station. *Id.* at 111-12. Duncan testified that Marquez initially stated that he did not remember kissing or touching TA, but later admitted to kissing TA, squeezing her breast, and touching her leg. *Id.* at 121-28, 145-46, 149-50. He denied touching TA at any other time. *Id.* at 128, 146-47. Duncan testified that Marquez was remorseful and at the conclusion of the interview he asked her to shoot him in the head. *Id.* at 128-30, 147-49.

On December 2, 2008, TA was evaluated at Child Abuse Response Evaluation Services "CARES" by Deborah Munson ("Munson"), a pediatric nurse practitioner, and Kimberly Goldstien ("Goldstien"), a licensed clinical social worker. Resp't Ex. 106 at 135; Resp't Ex. 107 at 49-50. Munson spoke to Wendy during "intake" and conducted a physical examination of TA. Resp't Ex. 107 at 50. Munson found no physical signs of sexual abuse. *Id.* at 83. Goldstien

subsequently interviewed TA. *Id.* at 75. The interview was videotaped and Munson observed the interview from a separate room through a one-way mirror. *Id.* 75-76. TA disclosed that Marquez put his fingers in her vagina at least five to ten times. Resp't Ex. 121 at 14.

A few days later, Wendy learned that TA had taken a pregnancy test at school. Resp't Ex. 107 at 43-46. Wendy testified that she questioned TA and, after some urging, she disclosed that Marquez had sex with her. *Id.* at 45-46, 54-55, 173. Wendy called CARES the next day and requested that TA undergo a full physical examination. *Id.* On December 9, 2008, Munson and Goldstien met with TA for a second time at CARES. TA disclosed that Marquez had sex with her twice and that she had been worried she might be pregnant. Resp't Ex. 107 at 92-94, Resp't Ex. 122 at 3-4.

TA testified at trial about the foregoing incidents. TA testified that Marquez kissed her on the lips, squeezed her breast, and put his hand on her upper thigh on November 29, 2008. Resp't Ex. 107 at 155-59. On at least three occasions Marquez put his finger in her vagina. *Id.* at 160-64. TA testified that Marquez put his penis in her vagina once in Marquez's bedroom and once in the boys' bedroom. *Id.* at 164-66. Marquez told her not to tell and she did not disclose the abuse because she didn't want to lose her friends and she was afraid people would think she was "bad." *Id.* at 167-68, 179. Ibarra-Chacon's sons testified that they saw Marquez take TA into a room by herself more than once. Resp't Ex. 107 at 138-39, 144-46.

Marquez testified in his own defense. He admitted kissing TA and touching her breast on November 29, 2008. Resp't Ex. 108 at 17, 19, 23-25. Marquez testified that he was drunk, and he described the incident as a waking nightmare. *Id.* at 15-17, 25-28. Marquez testified that he hallucinated seeing a "big, bald white man." *Id.* at 26. He denied touching TA before the

November incident. *Id.* at 21-23, 36-37. At the conclusion of Marquez's testimony, the defense rested. *Id.* at 37.

The jury returned a guilty verdict on all counts. Resp't Ex. 101 at 4, Resp't Ex. 138; Pet'r's Mem. in Supp. (ECF No. 49), Ex. A. The jury's verdict was unanimous as to the sexual abuse and sexual penetration charges, and 11-1 on the rape charges. Resp't Ex. 108 at 108-09. The trial judge imposed 75-month sentences on each count of sexual abuse, with ten years of post-prison supervision minus time served, and 300-month sentences on each count of sexual penetration and rape, with lifetime post-prison supervision. Resp't Ex. 109 at 35-38; Pet'r's Mem. in Supp., Ex. A at 2. All sentences were ordered to be served concurrently.

## II. Direct and Collateral Review

Marquez filed a direct appeal challenging his conviction and sentence. Appellate counsel filed an opening brief alleging that the trial court's imposition of a 300-month sentence and lifetime post-prison supervision violates the Oregon and U.S. Constitutions, and that the trial court's instruction to the jury that it could find Marquez guilty by a non-unanimous verdict violates the Sixth and Fourteenth Amendments to the U.S. Constitution. Resp't Ex. 110.

Marquez filed a *pro se* supplemental appellate brief alleging that (1) the trial court's imposition of lifetime post-prison supervision "minus time served" is an unlawful indeterminate sentence, (2) the trial court violated his right to confront witnesses by sustaining the prosecution's objection to a question posed to Ibarra-Chacon, and (3) the trial court violated his right to due process by overruling defense counsel's objection to a question posed to Ibarra-Chacon. Resp't Ex. 111 at 2-6. The Oregon Court of Appeals affirmed without opinion. *State v. Marquez*, 245 Or. App. 165 (2011). Marquez sought review by the Oregon Supreme Court on the same grounds. Resp't Ex. 113. The Oregon Supreme Court denied review. 351 Or. 541 (2012).

PAGE 5 – OPINION AND ORDER

Marquez next sought state post-conviction relief ("PCR") alleging multiple grounds of ineffective assistance of trial and appellate counsel, including that trial counsel rendered ineffective assistance of counsel ("IAC") by failing "to object to [the] CARES tape being accepted into evidence without being able to question the interviewer as a violation of Petitioner's confrontation rights." Resp't Ex. 117 at 3.

At the PCR proceeding, Marquez's defense counsel attested that "[o]ne of the theories of the defense was that the trained questioning by CARES contrasted with the untrained and unreliable questioning by the victim's mother had tainted the alleged victim's recollection." Resp't Ex. 145 at 1-2. Additionally, he attested that he raised an objection to the admission of the CARES tapes within a reasonable time of learning that the prosecution was not calling Goldstien as a witness and, in any event, he did not believe that Goldstien would have been a favorable witness. *Id.* at 2. The PCR court denied relief on the basis that Marquez failed to demonstrate that he received ineffective assistance of trial or appellate counsel. The PCR court reasoned that Goldstien's testimony might not have been favorable and, in any event, Marquez failed to demonstrate by a preponderance of the evidence that counsel's failure to object affected the outcome of the trial. Resp't Ex. 147 at 14-20.

Marquez appealed the denial of post-conviction relief. Appellate counsel assigned error to (1) the PCR court's denial of Marquez's IAC claim based on counsel's failure to timely object to the admission of the CARES tapes, (2) the PCR court's application of a preponderance of the evidence standard, and (3) the PCR court's failure to issue a sufficiently detailed decision. Resp't Ex. 149. Marquez filed a *pro se* supplemental brief assigning error to PCR counsel's deficient performance. Resp't Ex. 150 at 4. Marquez argued in the alternative that the "PCR court erred when it "failed to grant him relief based [on] his claims of ineffective assistance of *trial*

PAGE 6 – OPINION AND ORDER

counsel," and that he "seeks to assert any claims not presented in his opening brief for federal exhaustion purposes." *Id.* at 8 (emphasis added). Marquez alleged that "[h]e also asserts each of these claims under the federal constitution to the best of his ability given the limited space allowed." *Id.* The Oregon Court of Appeals affirmed the denial of post-conviction relief. *Marquez v. Premo*, 275 Or. App. 1023 (2015).

Appellate counsel filed a petition for review in the Oregon Supreme Court seeking review on the basis that (1) the PCR court's written judgment was not sufficiently detailed as required by state law, (2) the PCR court erred by applying a preponderance of the evidence standard, and (3) defense counsel was ineffective by failing to timely object to the admission of the CARES tapes. Pet'r's Exs. (ECF No. 58), Ex. 2002 at 11-12. Marquez filed a *pro se* supplemental petition, seeking review on grounds related to PCR counsel's performance and the use of a security device at trial. Resp't Ex. 156 at 6-7. The Oregon Supreme Court denied review. 301 Or. 885 (2017).

In the instant proceeding, Marquez alleges that (1) he received ineffective assistance of trial and appellate counsel in multiple particulars, (2) the trial court erred by failing to instruct the jury that its verdict must be unanimous, and (3) the trial court committed several additional errors at trial and sentencing that violated his right to due process. Pet'r's Pet. at 19-21.

## DISCUSSION

### I. Procedurally Defaulted Claims

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1); *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014). "[A] petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the

appropriate state courts . . . in the manner required by the state courts, thereby afford[ing] the state courts a meaningful opportunity to consider allegations of legal error." *Casey v. Moore*, 386 F.3d 896, 915-16 (9th Cir. 2004) (internal quotation omitted); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). A fair presentation requires the petitioner to reference both the specific federal constitutional guarantee at issue and the facts that support his claim. *Dickens*, 740 F.3d at 1317 (*quoting Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)). The presentation of a federal claim "for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons" for doing so does not satisfy the exhaustion requirement. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Casey*, 386 F.3d at 917.

A claim that was not, and can no longer be, fairly presented in state court is procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007). A state prisoner is barred from raising procedurally defaulted claims in federal court unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Smith*, 510 F.3d at 1139.

### A. Ground One, Subparts B through D

Marquez alleges in ground one, subparts B through D, that the trial court violated his right to due process by (1) overruling defense counsel's "relevance objection" to a question posed to Ibarra-Chacon, (2) imposing a sentence of lifetime post-prison supervision "minus time served," and (3) sustaining the prosecution's "speculation objection" to a question posed to Ibarra-Chacon. Marquez raised those grounds in his *pro se* supplemental brief on direct appeal and in his petition for review. *See* Resp't Exs. 111 & 113.

However, Marquez procedurally defaulted the grounds because he did not preserve them for appeal by raising them at trial as required by OR. R. APP. P. 5.45(1) (providing that the court of appeals will not review a claim of error unless it was preserved in the trial court but may in its discretion consider plain error). Resp't Resp. (ECF No. 28) at 7. He therefore presented ground one, subparts B through D to the Oregon appellate courts "for the first and only time in a procedural context in which [the] merits [would] not be considered unless there [were] special and important reasons" for doing so. *See Castille*, 489 U.S. at 351; *see also State v. Nordholm*, 293 Or. App. 369, 374 (2018) (holding that plain error review is reserved for rare and exceptional cases). Marquez does not contend otherwise, nor does he argue that his procedural default should be excused based on a showing of cause and prejudice or to prevent a fundamental miscarriage of justice. Accordingly, habeas relief is precluded as to ground one, subparts B through D.

### B. Ground Three, subparts A and C-N, and Ground Four

In Marquez's third ground for relief, he alleges that trial counsel was constitutionally ineffective. The ground contains fourteen subparts. In ground four, he alleges ineffective assistance of appellate counsel with three subparts. Respondent argues that, with the exception of ground three, subpart B, Marquez procedurally defaulted his available state remedies by failing to raise the claims on appeal from the denial of PCR relief. Marquez does not contend otherwise.

This Court agrees that Marquez procedurally defaulted his ineffective assistance of trial counsel claims, with the exception of ground three, subpart B, by failing to raise them in his counseled and *pro se* supplemental petitions for review to the Oregon Supreme Court on appeal from the denial of post-conviction relief. Because the time for seeking review by the Oregon Supreme Court has expired, the claims are procedurally defaulted. Marquez does not contend

PAGE 9 – OPINION AND ORDER

that his procedural default should be excused based on a showing of cause and prejudice or to prevent a fundamental miscarriage of justice. Accordingly, habeas relief is precluded as to ground three, subparts A and C-N.

Marquez also failed to raise his ineffective assistance of *appellate* counsel claims on appeal from the denial of post-conviction relief. Marquez does not argue otherwise, and he has not demonstrated that his procedural default should be excused. Accordingly, habeas relief is precluded as to ground four.

## II. The Merits

Pursuant to 28 U.S.C. § 2254(d), a district court shall not grant a petition for writ of habeas corpus filed by a state prisoner, with respect to any claim that was adjudicated on the merits in state court, unless the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). A state court unreasonably applies clearly established federal law under § 2254(d)(1), if its decision is so lacking in justification that there is an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. *Id.*; *Woods v. Sinclair*, 764 F.3d 1109, 1121 (9th Cir. 2014).

"For relief to be available under § 2254(d)(2), the state court's factual determination must have been 'not merely wrong' but '*objectively* unreasonable.'" *Pearce v. Nooth*, 743 F. App'x 804, 806 (9th Cir. 2018) (quoting *Hibbler v. Benefetti*, 693 F.3d 1140, 1146 (9th Cir. 2012)) (emphasis in original). When determining whether a state court's decision is based on an unreasonable determination of the facts, this Court must accord the state court decision substantial deference. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015). This deference, however,

"'does not imply abandonment or abdication of judicial review' and 'does not by definition preclude relief.'" *Pearce*, 743 F. App'x at 806 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

A.   **Ineffective Assistance of Counsel (Ground Three, Subpart B)**

In *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1987), the Supreme Court held that in order to prevail on an IAC claim, a habeas petitioner must prove that counsel's performance fell below an objective standard of reasonableness, and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. When considering an IAC claim, this Court's scrutiny of counsel's performance is highly deferential, and the Court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (*quoting Strickland*, 466 U.S. at 689); *Richter*, 562 U.S. at 104.

To satisfy the prejudice prong of *Strickland*, a petitioner "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Richter*, 562 U.S. at 104 (*quoting Strickland*, 466 U.S. at 694); *Hernandez v. Chappell*, 923 F.3d 544, 551 (9th Cir. 2019). To make this assessment, this Court must "compare the evidence that actually was presented to the jury with the evidence that might have been presented to the jury had counsel acted differently." *Hernandez*, 923 F.3d at 551 (internal quotations omitted). "[A] verdict or conclusion only weakly supported by the record is more

likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696.[2]

Marquez contends that trial counsel was ineffective for failing to timely object to the admission of the CARES tapes on the ground that the state did not intend to call Goldstien to testify, "leading to the playing of the tapes for the jury without any opportunity to cross examine Goldstein [sic] about her interview techniques and the complainant's changing accusations against Mr. Marquez, all to Mr. Marquez's prejudice." Pet'r's Br. in Supp. (ECF No. 49) at 2. Marquez argues that TA's statements concerning the sexual abuse changed over time and that the opportunity to cross examine Goldstien "would have been of great value." *Id.* at 5.

According to Marquez, if Goldstien had been called as a witness, she "would have had to admit familiarity with the CARES' interviewing rules, she would have had to acknowledge that biased, leading questioning increases the risk that a young sex abuse victim will embellish, and she would have had to admit that between the first CARES interview (when TA denied any penetration) and the second CARES interview (when TA claimed Marquez digitally penetrated and raped her) TA had been subjected to the kind of biased and leading questioning the CARES interviewing rules were designed to avoid." Pet'r's Supp. Br. (ECF No. 63) at 2. Marquez concludes that habeas relief is warranted under § 2254(d)(2) because the PCR court's decision is based on two unreasonable determinations of fact:

///

///

---

[2] This Court may address the prejudice prong of *Strickland* without first deciding if counsel's performance was deficient because the petitioner must establish both deficient performance and prejudice to be entitled to habeas relief. *Villafuerte v. Stewart*, 111 F.3d 616, 630 (9th Cir. 1997); *Gentry v. Sinclair*, 705 F.3d 884, 889 (9th Cir. 2013) (holding that the failure to meet either *Strickland* prong is fatal to a claim and there is no requirement that a court address both prongs).

> 1. The first unreasonable factual determination is the implicit acceptance of defense counsel's assertion that he did not know that the state didn't intend to call Goldstien when he initially failed to object to the introduction of the tapes; and
>
> 2. While the post-conviction court's ultimate decision is that the failure to object didn't prejudice Marquez, that conclusion is also an unreasonable determination of the facts, since it rests on trial counsel's false premise and is unsupported in the record.

Pet'r's Br. in Supp. at 12-13.[3]

The state record reflects that the CARES tapes were admitted into evidence, without objection, at the conclusion of Detective Duncan's direct testimony. Resp't Ex. 106 at 137. Defense counsel did not raise an objection to the admission of the tapes until the state expressed its intent to play the tapes for the jury the following day. Resp't Ex. 107 at 11-12. The trial court denied defense counsel's belated objection to the evidence as follows:

> MR. HUSEBY: I -- Your Honor, I would make an objection to the CARES tape being -- being played on -- on these grounds.
>
> THE COURT: Wait a minute, it's already -- it's already been received into evidence, hasn't it?
>
> MR. BARTON: It has.
>
> MR. HUSEBY: It has. Well, okay, I -- I would be object[ing] to it being played on the grounds, and I think -- and I wasn't entirely sure . . . who the State was intending on calling, but

---

[3] Marquez also argues that the PCR court's decision is contrary to *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1987) because the PCR court used a preponderance of the evidence standard. Pet'r's Br. in Supp. at 14-15. A fair reading of the PCR decision is that the court applied a preponderance standard to the underlying facts, not to its application of *Strickland*. *See Mariano-Santos v. Blacketter*, 266 F. App'x 593, 594 (9th Cir. 2008) (distinguishing between a PCR court's application of the preponderance standard to underlying facts and its application of *Strickland*); *Bletson v. Belleque*, No. 3:09-cv-01057-BR, 2012 WL 4324915, *12, n. 1 (D. Or. Sept. 19, 2012) (collecting district court cases rejecting the argument that the PCR court applied a preponderance of the evidence standard in its application of *Strickland*).

PAGE 13 – OPINION AND ORDER

it's my belief that Kimberly, I think it's Goldstein [sic], who is the interviewer in this case, I think there's probably going to be testimony that it's because of this interview, and how well it was done, and -- the training that they received, that the jury should trust this interview as -- as being reliable.

I believe my client has a right to confront that witness, Kimberly Goldstein [sic], and -- and without her -- her presence at the trial I do not think that the CARES tape, in which she is asking questions, and -- and doing things which I imagine Deborah Munson [is] going to describe . . . are acceptable . . . and good for interviewing children. Without her presence at the trial I think it . . . violates my client's confrontation right.

THE COURT: Okay. And, Mr. Barton, do you want to make a record?

MR. BARTON: The evidence has already been received, the defense did not object. The State has a right to play evidence for the jury that's already been received. It does not violate any confrontation rights. I'll lay a foundation that indicates that the people at CARES work as a team, that Deborah Munson was present when the tape was made, she's appeared also to authenticate what was present in the tape, and can certainly do that.

And she can talk about the things that have already – and I want to refer back to the record our pretrial discussion about CARES, and about the – the reasons [why] that we're calling Deborah Munson to testify, we already had that discussion before the trial.

So, I think for all those reasons that I've already mentioned earlier, and for what I just mentioned now, certainly we can play the CARES tapes, it's already in evidence.

THE COURT: Okay. The defendant's motion is denied on that issue.

Resp't Ex. 107 at 12-13. At the conclusion of Munson's testimony, defense counsel unsuccessfully renewed his objection. *Id.* at 150.

At the state PCR proceeding, defense counsel explained that he did not raise a timely objection to the CARES tapes because when the tapes were admitted he believed that the State planned to call Goldstien as a witness. Resp't Ex. 145 at 2. He also opined that Goldstien's

PAGE 14 – OPINION AND ORDER

testimony might not have been helpful to this defense. *Id.* The PCR court denied Marquez's IAC claim, concluding that Marquez failed to demonstrate that he was prejudiced by counsel's omission. The PCR court reasoned:

> I guess the interviewer could have been cross-examined. Defense counsel again in the affidavit he doesn't think that that would have been necessarily helpful. In a sense the interviewer could have reiterated why they asked certain questions and [indicated] the need for non-leading questions and all of that, it may have given more credibility. In any case, I'm not convinced by a preponderance of the evidence that it affected the outcome.

Resp't Ex. 147 at 14-15.

This Court agrees with Marquez's assertion that there are multiple references in the state court record indicating that defense counsel was forewarned (prior to the admission of the CARES tapes) that the state did not intend to call Goldstien as a witness. *See* Resp't Ex. 137 (witness list omitting Goldstien as a witness); Resp't Ex. 106 at 27 (omitting Goldstien from the list of potential witnesses read during *voir dire*); Resp't Ex. 106 at 91 (prosecution's opening statement omitting Goldstien from list of witnesses the state intends to call). However, this Court rejects Marquez's assertion that the PCR court "implicitly" accepted Huseby's attestation to the contrary. Rather, the PCR court clearly premised its decision on the prejudice prong of *Strickland*, *i.e.*, that Marquez did not demonstrate that he suffered prejudice as a result of counsel's failure to make a timely objection.

Similarly, this Court rejects Marquez's assertion that the PCR court's conclusion that he failed to demonstrate he suffered prejudice "rests on trial counsel's false premise and is unsupported by the record." On the contrary, there was overwhelming evidence in the state record to support the PCR court's decision. Although TA's disclosures of the abuse to her mother and CARES staff was incremental, her trial testimony was credible and consistent with her eventual disclosure of the full scope of the sexual abuse. Defense counsel's cross

PAGE 15 – OPINION AND ORDER

examination of Wendy, in an attempt to prove that she tainted TA's recollection, was not compelling when contrasted with (1) Wendy's description of her daughter's distress when Ibarra-Chacon witnessed the abuse, and (2) the fact that TA's final disclosure was prompt by the discovery that she had obtained a pregnancy test. Additionally, the prosecution proved that Marquez had the opportunity to abuse TA during the children's many playdates and sleepovers, and Ibarra-Chacon's sons testified they saw him go into a room alone with TA on at least two occasions.

Further, Marquez's description of his hallucination during the sexual abuse was unsupported by any psychological testimony to lend it credence. His testimony that he was drunk was contradicted by Detective Duncan's testimony that he did not seem impaired when she interviewed him. A reasonable juror could conclude that Marquez's grave remorse and his request that Duncan "put a bullet in his head" is indicative of his guilt. At bottom, Marquez's assertion that he suffered prejudice is premised on double speculation, *i.e.*, that there is a reasonable probability that a timely objection based on confrontation grounds would have been granted, and that Goldstien's testimony would have been helpful to the defense and resulted in a different outcome. *See Lopez v. Ryan*, 678 F.3d 1131, 1138 (9th Cir. 2012) (rejecting petitioner's argument as a "double layer of hypothetical speculation").

Based on the foregoing, this Court concludes that Marquez has failed to demonstrate that the state court's rejection of his IAC claim is contrary to, or an unreasonable application of clearly established federal law, or that it is based on an unreasonable determination of the facts based on the evidence presented. See 28 U.S.C. § 2254(d)(1) & (2). The Court therefore denies habeas relief on ground three, subpart B.

///

## B. Constitutionality of Sentence (Ground One, Subpart A)

Pursuant to OR. REV. STAT. § 137.700(2)(b)(D) and (F), a court must impose a mandatory determinate 300-month sentence for the crimes of rape in the first degree and sexual penetration in the first degree. Marquez argues that "[t]he penalty mandated by ORS 137.700(2)(b)(D) and (F) when applied to first-time offenders is disproportionate to the offenses of . . . rape and unlawful sexual penetration of a child under 12 years of age." Pet'r's Br. in Supp. at 8. In support of his argument, Marquez notes that the 300-month sentence exceeds the sentences specified in Oregon for manslaughter in the first degree, attempted aggravated murder, and conspiracy or solicitation to commit aggravated murder. *Id.* at 9.

A sentence for a term of years that is grossly disproportionate to the crime violates the Eighth Amendment. *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). The Supreme Court has recognized that the precise contours of the "gross disproportionality principle" are "unclear, [and] applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer*, 538 U.S. at 73, 77; *Graham v. Florida*, 560 U.S. 48, 60 (2010). When determining whether a sentence is grossly disproportionate, this Court considers the gravity of the offense and the severity of the sentence. *Graham*, 560 U.S. at 60; *Taylor v. Myles*, 747 F. App'x 601, 601 (9th Cir. 2019); *see Dixie v. Harrington*, 756 F. App'x 750, 751 (9th Cir. 2019) (explaining that a habeas court need not "perform intra-jurisdictional and inter-jurisdictional" comparison analyses of sentences absent an inference of gross disproportionality).

Marquez was convicted of raping TA on two occasions when she was under the age of twelve and three instances of sexual penetration in the first degree. Marquez's crimes were committed against a young and vulnerable victim trust in his care. Based on the gravity of Marquez's conduct (taking into account that he is a first-time offender), he has not made a

threshold showing of disproportionality. This Court rejects Marquez's assertion that his 300-month sentence is the functional equivalent of a death sentence. *See Coker v. Georgia*, 433 U.S. 584, 592 (1977) (holding that death sentence for the rape of an adult woman violates the Eighth Amendment). Accordingly, the state court's rejection of his Eighth Amendment claim is neither contrary to, nor an unreasonable application, of clearly established federal law.[4]

### C.     Non-Unanimous Verdict (Ground Two)

In his second ground for relief, Marquez alleges that the trial judge's refusal to instruct the jury that it must return a unanimous verdict violated his right to proof beyond a reasonable doubt guaranteed by the Sixth and Fourteenth Amendments. Marquez argues that this Court should order a new trial or, in the alternative stay consideration of this ground pending the U.S. Supreme Court's decision in *Ramos v. Louisiana*, No. 18-5925. This Court grants Marquez's request to stay consideration of this ground pending the Supreme Court's decision in *Ramos*.

## CONCLUSION

Based on the foregoing, this Court DENIES Marquez's Habeas Petition (ECF No. 2) as to grounds one and three, with prejudice. Ground two is held in abeyance pending the Supreme Court's decision in *Ramos*. Marquez shall advise the Court when the Supreme Court issues its

---

[4] Judges of this Court have rejected similar claims that a 300-month sentence for the first degree rape or sodomy of a child violates the Eighth Amendment. *See Galindo v. Cain*, No. 2:17-cv-00105-MO, 2019 WL 2746722, at *6 (D. Or. July 1, 2019) (holding that 300-month sentence for first degree sodomy of a four-year-old girl did not violate clearly established federal law), *appeal docketed*, No. 19-35560 (9th Cir. July 2, 2019); *Spradlin v. Nooth*, No. 2:15-cv-00118-SU, 2017 WL 2532229, at *7 (D. Or. Mar. 6, 2017) (holding that 300-month sentence for the first degree rape and sodomy of eight-year-old girl does not violate clearly established federal law), *report and recommendation adopted*, 2017 WL 2531942 (June 8, 2017); *Seaton v. Nooth*, No. 2:14-CV-00183-ST, 2015 WL 7731428, at *6-7 (D. Or. Sept. 30, 2015) (holding that 300-month sentence for the rape and sexual assault of a twelve-year-old girl did not violate clearly established federal law), *report and recommendation adopted*, 2015 WL 7722406 (D. Or. Nov. 30, 2015).

decision. Marquez's request for an evidentiary hearing is DENIED because the record in this case is sufficiently developed to resolve the issues before the Court.

**IT IS SO ORDERED.**

DATED this 6th day of March, 2020.

_____
KARIN J. IMMERGUT
United States District Judge